## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAHESWAR MIKKILINENI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-1391-CFC-SRF |
| | ) |
| PAYPAL INC., et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Plaintiff Maheswar Mikkilineni ("plaintiff") proceeds *pro se* in this action against

defendants PayPal, Inc. ("PayPal"), Shijil TS/Sparksupport Infotech Pvt Ltd. ("Shijil"),

GoDaddy.com, LLC ("GoDaddy"), and Director/Chandra X-Ray Center (CXC) for

Astrophysics/Harvard & Smithsonian (CfA) ("CXC") (collectively, "defendants"). He filed this

lawsuit on May 17, 2019 in the Superior Court of Delaware, alleging breach of contract,

negligence, and fraud. (D.I. 1, Ex. A) Presently before the court are the following motions: (1)

the motion to substitute party filed by the United States of America (the "United States")[1] (D.I.

3),[2] (2) two motions for discovery filed by plaintiff (D.I. 5: D.I. 13),[3] (3) the motions to dismiss

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by the United States of America (D.I. 4;

---

[1] The United States is not a named defendant, but seeks to be substituted in place of defendant CXC. (D.I. 3)

[2] The briefing for the pending motion to substitute party is as follows: the United States' opening brief (D.I. 3), plaintiff's answering brief (D.I. 13), the United States' reply brief (D.I. 16), and plaintiff's sur-reply brief (D.I. 19).

[3] The briefing for the pending motions for discovery is as follows: plaintiff's opening briefs (D.I. 5; D.I. 13), the United States' answering brief (D.I. 12), and plaintiff's reply brief (D.I. 18).

D.I. 11),[4] (4) the motion to transfer venue or, alternatively, dismiss under Fed. R. Civ. P.

12(b)(6) filed by defendant GoDaddy (D.I. 8),[5] and (5) two motions to remand filed by plaintiff

(D.I. 14; D.I. 20).[6] For the following reasons, I recommend granting the United States' motion

to substitute party, denying plaintiff's motions for discovery, granting the United States' motions

to dismiss, denying GoDaddy's motion to transfer venue, and granting-in-part and denying-in-

part plaintiff's motions to remand.[7]

## II.  BACKGROUND

### a.  Procedural History

On May 17, 2019, plaintiff originally filed this action against defendants PayPal, Shijil,

GoDaddy, and CXC in the Superior Court of the State of Delaware.  (D.I. 1, Ex. A)  On July 26,

2019, the case was removed to this court by the United States, on behalf of defendant CXC,

pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statute,[8] 1446(a) and 42 U.S.C.

---

[4] The briefing for the pending motions to dismiss is as follows:  the United States' opening brief (D.I. 4; D.I. 11) and plaintiff's answering briefs (D.I. 13; D.I. 18).  Plaintiff filed a motion for discovery and attached a First Amended Complaint to his briefing.  (D.I. 5)  The court is treating the First Amended Complaint as the operative pleading, which would technically moot the earlier motion to dismiss filed by the United States (D.I. 4).  However, the court has considered all of the briefing from both sides and this Report and Recommendation is dispositive of both motions to dismiss filed by the United States.  (D.I. 4; D.I. 11)  Pursuant to D. Del. LR 7.1.2(b), the United States' reply brief was due on or before August 22, 2019, but the United States did not file a reply brief.

[5] The briefing for the pending motion to transfer venue or alternatively dismiss is as follows:  GoDaddy's opening brief (D.I. 9), plaintiff's answering brief (D.I. 14), GoDaddy's reply brief (D.I. 17), and plaintiff's sur-reply brief (D.I. 19).

[6] The briefing for the pending motions to remand is as follows:  plaintiff's opening briefs (D.I. 14; D.I. 20), GoDaddy's answering brief (D.I. 17), the United States' answering brief (D.I. 22), and plaintiff's reply brief (D.I. 19).

[7] In light of the court's recommendation to remand the case to the Superior Court of the State of Delaware, the court will not consider GoDaddy's alternative motion to dismiss.

[8] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in

2

§ 233(c). (D.I. 1) On July 29, 2019, the United States filed a motion to substitute itself in place of defendant CXC. (D.I. 3) Concurrently, the United States filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (D.I. 4) On August 1, 2019, plaintiff filed a motion for discovery and a response to the notice of removal. (D.I. 5) Plaintiff attached an amended complaint (the "First Amended Complaint") to his motion for discovery. (*Id.* at 4-18)

On August 2, 2019, GoDaddy filed a motion to transfer or, in the alternative, for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 8) On August 8, 2019, the United States filed a motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (D.I. 11) On August 8, 2019, plaintiff filed a motion for discovery and a motion for remand. (D.I. 13; D.I. 14) On August 26, 2019, plaintiff filed another motion for remand. (D.I. 20)

### b.   Facts[9]

#### i.   Shijil

Plaintiff created a website, Maheswar.org (the "website"), using GoDaddy. (D.I. 5 at 6) In March of 2018, plaintiff and Shijil signed an agreement, wherein Shijil agreed to write computer code for the website and provide portions of code by three deadlines: April 11, 2018, May 8, 2018, and June 20, 2018. (*Id.*) For this service, plaintiff was to provide Shijil with designs and layouts for features on the website and two fee payments of $4,000 each through PayPal. (*Id.* at 6-7) Plaintiff also supplied Shijil with propriety information and his log-in

---

an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

[9] The facts in this section are based upon allegations in the First Amended Complaint, which the court accepts as true for the purposes of the present motion to dismiss. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). Page citations to D.I. 5 in this section pertain to the First Amended Complaint attached to plaintiff's motion. (D.I. 5)

3

information for GoDaddy. (*Id.* at 7) Shijil failed to produce the code by the April 11, 2018 and May 8, 2018 deadlines. (*Id.*) Shijil and plaintiff negotiated a new delivery date of June 12, 2018. (*Id.*) Shijil failed to meet the June 12, 2018 deadline, and did not provide plaintiff with any functional product. (*Id.* at 8)

On July 24, 2018, plaintiff emailed Shijil and asked for a new proposed delivery date and a complete list of items taken from his website's server. (*Id.*) On the next day, Shijil responded that it would not provide a new delivery date and advised that it was abandoning the agreement. (*Id.*) Shijil did not provide a list of items taken from the website and retained the designs and layouts that plaintiff provided for use on the website. (*Id.*) On April 3, 2019, Shijil emailed plaintiff and accused him of having "a history of cheating developers in India." (*Id.* at 10) Plaintiff asserts claims of breach of contract, negligence and/or gross negligence, and fraud against Shijil. (*Id.* at 18)

### ii. PayPal

On July 26, 2018, plaintiff posted a dispute with PayPal for one of his $4,000 fee payments to Shijil. (*Id.* at 8) On August 21, 2018, PayPal informed plaintiff that he indicated a partial refund would be satisfactory and that it would make its best effort to recover the balance from Shijil. (*Id.*) Plaintiff was unable to post a dispute about the second $4,000 fee payment to Shijil. (*Id.*) Plaintiff asserts claims of negligence and/or gross negligence and fraud against PayPal. (*Id.* at 18)

### iii. GoDaddy

Plaintiff hosted his website on GoDaddy's server. (*Id.* at 6) On March 12, 2019, plaintiff received an email from GoDaddy, which noted that backup of the website was incomplete, no database was found for the website, eighty files were added and 102 files were removed. (*Id.* at

4

10) On the next day, plaintiff received another email from GoDaddy that stated that the backup was completed, 152 files were added to the website, and fifty-two files removed. (*Id.* at 11) On March 25, 2019, plaintiff contacted a GoDaddy agent because he could not log into the website using his credentials. (*Id.*) GoDaddy support agents believed that "someone, either your developer or [a] hacker" may have created the issues in backing up the website. (*Id.*) On May 6, 2019, plaintiff reported the problem to GoDaddy via email, and GoDaddy directed him to contact its customer support. (*Id.*) On the same day, plaintiff contacted a GoDaddy agent, who suggested that GoDaddy could clean up the website's files and migrate them to a new server. (*Id.* at 12) In addition to issues in backing up his website, plaintiff discovered that his website's "sign up" form did not work properly. (*Id.* at 13) On June 15, 2019, he reported this problem to GoDaddy, but did not receive a response. (*Id.*) GoDaddy did not review the raw access files or identify the source of the problems he encountered. (*Id.*) Plaintiff asserts a claim of negligence and/or gross negligence against GoDaddy. (*Id.* at 18)

### iv.    The United States[10]

The Smithsonian Astrophysical Observatory ("SAO") conducts astrophysical research and joins with the Harvard College Observatory to form the Center for Astrophysics.[11] (D.I. 4, Ex. A at 1-2) The Smithsonian Institute (the "Smithsonian"), by and through SAO, won the National Aeronautics and Space Administration ("NASA") contract to develop and operate the Chandra X-ray Center. (*Id.* at 2) This NASA contract includes conducting the operations for the Chandra X-ray Observatory, which is a "space-based X-ray telescope providing the highest

---

[10] The court grants the motion of the United States to substitute in place of CXC as the real party in interest for the reasons stated *infra*.

[11] The SAO develops and operates the CXC, which annually invites scientific proposals to use Chandra, a space-based x-ray telescope. (D.I. 4, Ex. A at 1-2)

angular-resolution observations of the high-energy Universe of any telescope in the world." (*Id.*) On an annual basis, CXC invites scientific proposals, conducts a peer review of the proposals, and selects a few winning proposals based on scientific merit. (*Id.*)

On March 13, 2019, plaintiff sent a formal proposal, entitled "Neutron (Dark Object or DNA) within Solar Sun-Sirius System," to the director of the CXC. (D.I. 5 at 15) On the same day, CXC confirmed receipt of plaintiff's proposal. (*Id.*) On May 8, 2019, plaintiff emailed CXC, writing "please advise me on the status on or before May 14, 2019 or I may have to assume you have 'no' interest to review/consider the proposal and I am free to initiate an 'action' under the laws." (*Id.*) On May 30, 2019, CXC responded and noted proposals were subject to peer reviews that were not open to the general public. (*Id.* at 16) CXC advised that it expected to notify applicants who have submitted proposals with the results of the peer review within a few weeks of the closing date. (*Id.*) On July 25, 2019, CXC notified plaintiff that it had received 516 proposals and, given available observing time and funding, 168 were accepted. (*Id.*) Furthermore, CXC advised that no proposal with a grade below 3.5 was recommended for inclusion in the Chandra observing program and that plaintiff's proposal received a grade of "0.00." (*Id.*) Plaintiff asserts a claim of negligence and/or gross negligence against CXC. (*Id.* at 18)

## III. LEGAL STANDARD

### a. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring its claim. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. *See Lincoln Ben. Life. Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015)

(quoting *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)). In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the court must accept all factual allegations in the complaint as true, and the court may only consider the complaint and documents referenced in or attached to the complaint. *See Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008); *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a factual challenge to the court's subject matter jurisdiction, the court is not confined to the allegations in the complaint. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction.[12] *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *See Lincoln*, 800 F.3d at 105; *Mortensen*, 549 F.2d at 891.

**b.    Transfer Venue**

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

"[F]orum selection clauses are presumptively valid and enforceable absent a showing by the resisting party that enforcement of the clause would be unreasonable under the circumstances." *Asphalt Paving Sys., Inc. v. Gannon*, 2015 WL 3648739, at *3 (D.N.J. June 11,

---

[12] To explain the relationship between the SAO and the CXC as it relates to subject matter jurisdiction, the United States has submitted the declaration of Roger Brissenden. (D.I. 4, Ex. A) The declaration provides that the Smithsonian, by and through the SAO, won the NASA contract to develop and operate the CXC, which includes operations of Chandra, a space-based x-ray telescope. (*Id.* at 1-2)

2015) (citing *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972)). In the Third Circuit,

when facing a valid forum selection clause, a district court modifies its analysis three ways:

> First, no weight is given to the plaintiff's choice of forum. Second, the court does
> not consider arguments about the parties' private interests. Instead, 'a district
> court may consider arguments about public-interest factors only.' Third, 'when a
> party bound by a forum-selection clause flouts its contractual obligation and files
> suit in a different forum, a § 1404(a) transfer of venue will not carry with it the
> original venue's choice-of-law rules – a factor that in some circumstances may
> affect public-interest considerations.'

*In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (internal

citations omitted) (quoting *Atlantic Marine Contr. Co. v. U.S. District Court for the Western

Dist. of Texas*, 571 U.S. 49, 63-64 (2013)). "Because [public interest factors] will rarely defeat a

transfer motion, the practical result is that forum-selection clauses should control except in

unusual cases." *Atlantic Marine*, 571 U.S. at 64. For example, transfer should not be granted if

it would inefficiently result in fragmentation of the litigation. *See ABC Med. Holdings, Inc. v.*

*Home Med. Supplies, Inc.*, 2015 WL 5818521, at *9 (E.D. Pa. Oct. 6, 2015).

## IV. DISCUSSION

### a. The United States' Motion to Substitute Party[13]

The United States moves to substitute itself in place of defendant CXC.[14] (D.I. 3) David

C. Weiss, United States Attorney for the District of Delaware, has certified that defendant

---

[13] The United States' motion to substitute party is "a non-dispositive pretrial matter that can be
determined by a magistrate judge under 28 U.S.C. § 636(b)(1)(A)." *Eastman Chemical*
*Company v. Alphabet Inc.*, C.A. No. 09-971-LPS-CJB, 2011 WL 13054223, at *1 n.1 (D. Del.
Dec. 9, 2011) (internal quotation marks omitted) (quoting *Finova Capital Corp. v. Lawrence*,
2000 WL 1808276, at *1 n.1 (N.D. Tex. Dec. 8, 2000)). Therefore, the court's ruling on this
motion is subject to Fed. R. Civ. P. 72(a).

[14] Under the Westfall Act, "[u]pon certification by the Attorney General that the defendant
employee was acting within the scope of his office or employment at the time of the incident out
of which the claim arose, any civil action or proceeding commenced upon such claim in a United
States district court shall be deemed an action against the United States under the provisions of
this title and all references thereto, and *the United States shall be substituted as the party*
*defendant*." 28 U.S.C. § 2679(d)(1) (emphasis added).

8

Director of CXC was an employee of the Smithsonian Institution and acting within the scope of her employment at the time of the incidents giving rise to this suit. (D.I. 3, Ex. A) In response, plaintiff seeks discovery on this certification. (D.I. 13 at 2)

"[T]he Attorney General's certification, although subject to judicial review, is *prima facie* evidence that the employee's challenged conduct was within the scope of employment." *Schrob v. Catterson*, 967 F.2d 929, 935 (3d Cir. 1992). If this certification is disputed, "the burden then shifts to the plaintiff, who must come forward with specific facts rebutting the certification." *Id.* Here, plaintiff has failed to meet his burden by providing specific facts rebutting the certification. (D.I. 13)

"[T]he Smithsonian is an 'agency' of the United States under § 1442(a)(1)." *In re Subpoena In Collins*, 524 F.3d 249, 251 (D.C. Cir. 2008). Furthermore, 42 U.S.C. § 233(c) states:

> [u]pon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action *brought against the United States* under the provisions of Title 28 and all references thereto.

42 U.S.C. § 233(c) (emphasis added). Plaintiff has failed to provide specific facts to rebut the certification and, therefore, the United States motion to substitute party is granted.

**b.** **Motions for Discovery[15]**

In response to the United States' certification that the Director of CXC was an employee of the Smithsonian during the relevant time period, plaintiff seeks "short/quick discovery" to

---

[15] Plaintiff's motions for discovery are nondispositive and, therefore, the court's rulings on these motions are subject to Fed. R. Civ. P. 72(a).

answer the question of whether the Director was an employee of the Smithsonian. (D.I. 5 at 3) Plaintiff filed a similar motion for an "Initial-Discovery" as to whether "Harvard/Smithsonian" is a contractor or agency under 28 U.S.C. § 2671 and attached several proposed interrogatories to his motion. (D.I. 13 at 2, 5-9)

"[D]iscovery and, if necessary, a hearing to determine whether conduct was within the scope of employment" is appropriate under certain circumstances. *Haas v. Barto*, 829 F. Supp. 729, 733 (M.D. Pa. 1993) "However, such a hearing is required only in those special rare circumstances where there is a factual dispute which would decide the scope of employment issue, as the crux of the certification dispute." *Schrob*, 967 F.2d at 935.

Here, the U.S. Attorney's certification is *prima facie* evidence that defendant Director of the CXC was an employee of the government acting within the scope of her employment in the relevant time period. *See id.* Where such certification has been made, the burden shifts to the plaintiff to provide specific facts to rebut the certification. *See id.* As discussed *supra*, plaintiff has failed to proffer specific facts to rebut the certification or call it into question. (D.I. 5; D.I. 13) "[P]ermitting additional discovery when the Attorney General's certification is not based on a different understanding of the facts than is reflected in [plaintiff's] complaint would undermine the intent of the Westfall Act[16] to protect federal employees from responding to state law tort claims." *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000). Plaintiff has not argued that the certification misinterprets the allegations in the First Amended Complaint. Therefore, plaintiff's motions for discovery are denied.

---

[16] The Westfall Act, 28 U.S.C. §§ 2671-2680, amended the Federal Tort Claims Act to eliminate "the requirement that for the employee to have immunity the allegedly wrongful acts must have involved the exercise of discretion." *See* 28 U.S.C. §§ 2671-2680; *see also Huertero v. U.S.*, 601 F. App'x 169, 171 & n.10 (3d Cir. 2015).

10

### c. The United States' Motions to Dismiss

The United States argues that the court lacks subject matter jurisdiction because plaintiff did not file an administrative claim with the Smithsonian and, therefore, the limited waiver of sovereign immunity under the Federal Tort Claims Act does not apply. (D.I. 11 at 5-7)

The Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, is the exclusive remedy against the United States for certain negligent or wrongful acts of federal employees acting within the scope of their employment. *See Priovolos v. Federal Bureau of Investigation*, 686 F. App'x 150, 152 (3d Cir. 2017); 28 U.S.C. § 2679(b)(1). The Federal Tort Claims Act "operates as a limited waiver" of the sovereign immunity of the United States and should be "strictly construed." *Priovolos*, 686 F. App'x at 152; *see also White-Squire v. U.S. Postal Service*, 592 F.3d 453, 456 (3d Cir. 2010).

Under 28 U.S.C. § 2675:

[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have *first presented the claim to the appropriate Federal agency* and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675 (emphasis added). Therefore, "[f]iling a proper administrative claim is an absolute and unwaivable jurisdictional prerequisite to filing and maintaining an action under the [Federal Tort Claims Act]." *Jones v. U.S.*, 195 F. Supp. 2d 591, 596 (D. Del. 2002) (internal quotation marks omitted). The Smithsonian is a federal agency and its employees are employees of the government. *See Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Inst.*, 566 F.2d 289, 297 (D.C. Cir. 1977).

Here, plaintiff has not pleaded that he filed an administrative claim with the Smithsonian. (D.I. 5) Moreover, the United States has proffered the Declaration of Judith Leonard, General Counsel for the Smithsonian, which states that the Smithsonian has no record of receiving a Federal Tort Claims Act claim from plaintiff. (D.I. 4, Ex. B) Plaintiff does not contest his failure to file an administrative claim with the Smithsonian, but instead argues that the present motion is premature and that he should be allowed to file a complaint "with specific wrongful acts of the US under Tort Claims Act." (D.I. 18 at 2) Filing an amended complaint with alleged "wrongful acts" would not cure the jurisdictional deficiency based upon plaintiff's failure to file an administrative claim. *See Adams v. Klein*, C.A. No. 18-1330-RGA, 2019 WL 4143106, at *2 (D. Del. Aug. 30, 2019) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434 ("A court may deny leave to amend if amendment would be futile.").

Therefore, the court recommends granting with prejudice the United States' motions to dismiss for lack of subject matter jurisdiction. The court's recommendation to dismiss for lack of subject matter jurisdiction eliminates the need to consider the United States' alternative argument to dismiss plaintiff's claims for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 11 at 7-8)

## d. GoDaddy's Motion to Transfer

GoDaddy seeks to transfer to the United States District Court for the District of Arizona, pursuant to the terms of GoDaddy's Universal Terms of Service Agreement ("UTOS").[17] (D.I. 9 at 1) The UTOS contains a forum selection clause that provides for exclusive venue in the state or federal courts of Maricopa County, Arizona. (*Id.*) Specifically, the UTOS states:

GoDaddy and you agree that any controversy excluded from the dispute resolution procedure and class action waiver provisions in this Section (other than

[17] The United States takes no position on whether this matter should be transferred. (D.I. 15)

12

an individual action filed in small claims court) shall be filed only in the Superior Court of Maricopa County, Arizona, or the United States District Court for the District of Arizona, and each party hereby irrevocably and unconditionally consents and submits to the exclusive jurisdiction of such courts for any such controversy. You also agree to waive the right to trial by jury in any such action or proceeding.

(D.I. 9-2 at 61) Plaintiff argues that although he ordered and received services from GoDaddy, he did not consent to venue in Arizona.[18] (D.I. 5 at 7-11; D.I. 14 at 2-3) However, GoDaddy provides customers with products and services only if customers have acknowledged their consent to be bound by the UTOS. (D.I. 9-2 at 28-31)

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action "to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and witnesses and in the interest of justice." *In re McGraw-Hill*, 909 F.3d at 57. The party moving to transfer venue under section 1404(a) bears the burden of persuasion. *See id.*

In 2013, the Supreme Court held that a traditional balancing test is modified in three ways when a forum selection clause applies to a dispute. *See Atlantic Marine*, 571 U.S. at 63. First, the court does not weigh the plaintiff's choice of forum. *See id.* Additionally, the court does not consider the parties' private interests, but only considers arguments about public interest

---

[18] Plaintiff suggests that the Declaration of Jessica Hanyen, the Business Operations Manager for GoDaddy (the "Hanyen Declaration"), is inaccurate. (D.I. 14 at 1-2) Plaintiff requests that any taped phone conversations he had with GoDaddy representatives be produced to support the Hanyen Declaration. (*Id.* at 1-2, 6; D.I. 19 at 5-6, 8) However, courts have found that a plaintiff's "very existence as a[ customer of defendant] is evidence that he agreed to the . . . form contract proffered by Defendant." *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).

factors.[19] *See id.* at 64. Finally, in the face of a valid forum selection clause, a section 1404(a) transfer of venue will not carry the original venue's choice of law rules. *See id.*

Here, the UTOS' forum selection clause only applies to defendant GoDaddy. (D.I. 9-2 at 34-66) Practical considerations must guide the court's transfer analysis when a contractual forum selection provision is unavailable to all defendants in the case. The court in *ABC Med. Holdings, Inc.* contemplated the issue of a forum selection provision binding some, but not all the parties. "A situation where only some of the parties are bound to the forum selection clause 'implicat[es] concerns attending parallel lawsuits not present in *Atlantic Marine.*'" *ABC Med. Holdings, Inc. v. Home Med. Supplies, Inc.*, 2015 WL 5818521, at *9 (E.D. Pa. Oct. 6, 2015) (quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014)). Furthermore, "the need – rooted in the valued public interest in judicial economy – to pursue the same claims in a single action in a single court can trump a forum selection clause." *Id.* (quoting *In re Rolls Royce Corp.*, 775 F.3d at 679). Here, the court concludes that it would be inappropriate and inefficient to fragment this action such that the claims against GoDaddy are transferred, while the claims against the other defendants remain in a different forum. Doing so "would result in inefficient and duplicative litigation." *Id.* Therefore, the court recommends denying GoDaddy's motion to transfer venue to the District of Arizona. Furthermore, it is unnecessary for the court to consider GoDaddy's alternative motion to dismiss in light of the court's recommendation to remand the

---

[19] "The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal citations omitted).

14

remaining ancillary state law claims to the Superior Court of the State of Delaware, as discussed *infra*.

### e. Plaintiff's Motions to Remand

Plaintiff argues that his claims against GoDaddy should be remanded because only claims against the United States should have been removed to this court.[20] (D.I. 14 at 5-6) The court's recommendation to dismiss plaintiff's claims against the United States eliminates the federal claim warranting removal. Dismissal results in lack of subject matter jurisdiction and leaves ancillary state law claims for negligence, breach of contract, and fraud regarding plaintiff's website based claims against the remaining defendants, GoDaddy, PayPal, and Shijil. (D.I. 5 at 18) Pursuant to the statute governing procedure after removal, 28 U.S.C. § 1447, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). Therefore, the court recommends granting-in-part plaintiff's motions to remand his ancillary state law claims against GoDaddy, PayPal, and Shijil.

## V. CONCLUSION

For the foregoing reasons, the court recommends the following actions on the pending motions:

(1) GRANTING the United States' motion to substitute party (D.I. 3);

(2) DENYING plaintiff's motions for discovery (D.I. 5; D.I. 13);

(3) GRANTING the United States' motions to dismiss (D.I. 4; D.I. 11);

(4) DENYING GoDaddy's motion to transfer venue (D.I. 8); and

---

[20] In light of the court's recommendation regarding the United States' motion to dismiss *supra*, the court need not address plaintiff's arguments regarding remanding his claims against the United States.

(5) GRANTING-IN-PART AND DENYING-IN-PART plaintiff's motions to remand (D.I. 14; D.I. 20).

This Report and Recommendation regarding the United States' motion to dismiss, GoDaddy's motion to transfer venue, and plaintiff's motions to remand is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The orders concerning the United States' motion to substitute party and plaintiff's motions for discovery are nondispositive and subject to Fed. R. Civ. P. 72(a). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(a)-(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order In Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

The Clerk of Court shall cause a copy of this Report and Recommendation to be mailed to Plaintiff.

Dated: January **28**, 2020

Sherry R. Fallon
United States Magistrate Judge